UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

C.W.,

                Plaintiff,

v.

FRANK BISIGNANO,[1]
Commissioner of Social Security,

                Defendant.

**DECISION AND ORDER**
23-CV-629-A

---

## I.    INTRODUCTION

Plaintiff C.W. brings this action against the Commissioner of Social Security (hereinafter the "Commissioner"), seeking review of the Commissioner's determination denying Plaintiff disability benefits under the Social Security Act. Plaintiff (Dkt. 4) and the Commissioner (Dkt. 7) have cross-filed motions for judgment on the pleadings. For the reasons set forth below, the Plaintiff's motion is **DENIED**, and the Commissioner's motion is **GRANTED**.

### *A. Procedural History*

On April 27, 2020, Plaintiff C.W. (d/o/b March 13, 1994) filed applications for Title II period of disability and disability insurance benefits and Title XVI supplemental security income, alleging disability beginning on September 7, 2019.

---

[1] On May 7, 2025, Frank Bisignano was sworn in as the Commissioner of Social Security. He is substituted pursuant to Fed. R. Civ. P. 25(d). The Clerk is directed to amend the caption to comply with this substitution.

Those claims were denied initially on July 16, 2020, and, upon reconsideration, on September 11, 2020. Thereafter, Plaintiff filed a request for a hearing. Plaintiff appeared and testified at a video hearing on December 16, 2021, before Administrative Law Judge ("ALJ") Sheena Barr. (T. 36-59). [2] James Soldner, a vocational expert, also testified at the hearing. Plaintiff was represented by Ida Comerford, an attorney representative. The ALJ issued an unfavorable decision on February 2, 2022. (T. 17-35). Plaintiff exhausted his administrative remedies, culminating in a denial from the Appeals Council on May 4, 2023. (T. 1-6). This action followed.

### B. The ALJ's Decision

In her February 2, 2022, decision, the ALJ, in considering Plaintiff's claim, followed the established a five-step sequential evaluation process for determining whether Plaintiff was disabled (20 CFR 404.1520(a) and 416.920(a)). (T. 21-30).

At step one, the ALJ determined that since September 7, 2019, the alleged onset date, Plaintiff, was employed at several different businesses. The ALJ further determined that during 2020, Plaintiff's earnings during did not rise to the monthly threshold to be considered substantial gainful activity. (T. 23). However, the ALJ determined that during the first three quarters of 2021, Plaintiff's earnings were at the level of substantial gainful activity, and that Plaintiff was then currently working. *Id.* Nevertheless, despite her conclusion that Plaintiff had engaged in substantial

---

[2] References herein preceded by "T" are to consecutively paginated, Bates-stamped pages within the administrative transcript of official proceedings in this case (Dkt. 3).

gainful activity, the ALJ nevertheless determined that "a decision based on the vocational as well as medical factors" was "pertinent in this claim." *Id*. For that reason, the ALJ nevertheless continued her sequential evaluation.

While the ALJ next determined that Plaintiff's bipolar disorder amounted to a severe impairment, she further found that such mental impairment (or combination of impairments) did not meet or equal the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). *Id*., pp. 23-25. In addition, the ALJ found that Plaintiff had, the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following non-exertional limitations—which limited him to performing simple, routine work and required him to have low contact interaction with supervisors, coworkers, and the public. The RFC also provided that Plaintiff should be limited to those positions which allowed him to be off task for up to 5% of the workday. *Id*., pp. 25-28.

The ALJ found that although the Plaintiff could not perform his past relevant work as a retail store manager, considering his age (25), education (at least high school education), work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the Plaintiff could perform, including as an industrial cleaner, storage laborer, or laundry worker. *Id*., pp. 29-30. Based upon the foregoing, the ALJ determined that Plaitnfiff was not disabled. *Id*., p. 30.

### C. The Instant Action

Plaintiff commenced this action, by and through his counsel, with the filing of a complaint on June 28, 2023. Dkt. 1. Plaintiff seeks judgment in his favor claiming that the ALJ erred in assessing an RFC that was not based on substantial evidence after rejecting the opinions of record, relying on her lay opinion, and failing to develop the record despite a clear gap in it. Dkt. 4. The Commissioner, on the other hand, interposed a brief in opposition to Plaintiff's motion and in support of its request for judgment on the pleadings.  Dkt. 7.

## II.    APPLICABLE LAW

### A. Standard of Review

In reviewing a final decision of the SSA, a district court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. It is not this Court's function to make a *de novo* determination as to whether the claimant is disabled; rather, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn" to determine whether the SSA's findings are supported by substantial evidence. *Id*.

"The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." *42 U.S.C. § 405(g)*; *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982) ("Congress has instructed ... that the factual findings of the Secretary, if supported by substantial evidence, shall be conclusive."). "Under this 'very deferential standard of review,' 'once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would have to conclude otherwise.'" *Bonet ex rel. T.B. v. Colvin*, 523 Fed.Appx. 58, 58-59 (2d Cir. 2013) (italics omitted) (quoting *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012). The issue is not whether substantial evidence supports the claimant's argument, but "whether substantial evidence supports the ALJ's decision." *Bonet ex rel. T.B.*, 523 Fed.Appx. at 59 (italics omitted).

"In determining whether the agency's findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Talavera v. Astrue*, 697 F.3d at 151 (internal quotations omitted).

### B. Legal Standard to Determine Disability

To determine whether a person claiming to be disabled is eligible for benefits under the Act, the ALJ follows a familiar five-step sequential evaluation, determining: (1) whether the claimant is engaged in substantial gainful work activity; (2) whether the claimant has any "severe" impairments that significantly restrict his or her ability to work; (3) whether the claimant's impairments meet or medically equal the criteria of any listed impairments in Appendix 1 of Subpart P of Regulation No. 4 (the

5

"Listings"), and if they do not, what the claimant's residual functional capacity ("RFC") is; (4) whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work; and (5) whether the claimant's RFC permits him or her to perform alternative substantial gainful work which exists in the national economy in light of her age, education, and work experience. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986); *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *see also* 20 C.F.R. §§ 404.1520 and 416.920(a).

The ALJ has a "duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 111 (2000) (citation omitted). The ALJ need not, however, recite every piece of evidence that contributed to the decision so long as the record permits a reviewing court the ability to glean the rationale of the ALJ's decision. *Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013).

### III. ANALYSIS

#### A. The ALJ Did Not Err in Determining Plaintiff's RFC

Plaintiff argues that the ALJ erred in assessing an RFC that was not based on substantial evidence, as she had rejected the two opinions of record, and instead, without support in the record and relying on her own opinion, essentially made-up Plaintiff's RFC. Dkt. 4-1, p. 9. Such contention lacks merit.

As previously noted, the ALJ determined that Plaintiff had "the residual functional capacity to perform a full range of work at all exertional levels but with the

following nonexertional limitations: he is limited to performing simple, routine work requiring low contact interaction with supervisors, coworkers, and the public. In addition, he is limited to work allowing him to be off task for up to 5% of the workday." T. 25.

The record contains opinions from two State agency mental consultant opinions experts, Dr. May and Dr. Dekeon, who both opined, after reviewing Plaintiff's file in 2020, that although Plaintiff suffered from bipolar disorder, his symptoms stabilized with treatment, so he was neither reporting nor demonstrating current impairment and had no limitations within the four functional domains. (T. 69-70; 84-85).

The ALJ, however, found such opinions unpersuasive, as they were "far less restrictive than indicated by the evidence of record, which demonstrates bipolar disorder with history of medication non-compliance and persistent symptoms. The evidence demonstrates improvement in the claimant's symptoms with compliance with his prescribed treatment."  T. 28. Although the remainder of the ALJ's justification in rejecting the experts' opinions that Plaintiff had no limitations was truncated in her written decision, see, T. 28, it is clear to this Court that the ALJ plainly determined that such opinions did not adequately consider the claimant's "subjective complaints" or his "self-reported retained mental capacity."  Id.  In that regard, the ALJ determined that Plaintiff's "statements about the intensity, persistence, and limiting effects of his [ ] symptoms" used to support his claimed disability were "inconsistent because his hearing testimony, as well as reports

throughout the evidence of record, indicate a higher level of functioning than alleged." T. 27.

As the ALJ noted, see, T. 26, Plaintiff testified at the hearing that he was able to concentrate and "tune out" distractions, such as by putting on music, when performing simple tasks like washing dishes, although he had trouble with more complicated tasks. T. 49. The ALJ further observed, see, T. 26, that Plaintiff testified that he could learn new tasks, although it was easier for him to do so if he were shown by hands-on demonstration versus other methods. T. 51. Based upon the foregoing, this Court finds that it was reasonable for the ALJ to conclude Plaintiff's own testimony established his ability to perform simple, routine work, as stated in the RFC. T. 25. As this Court has recently observed, "[u]p to moderate limitations in the functional area of regulating emotion, controlling behavior, and maintaining well-being may be accounted for in an RFC—such as that crafted by the ALJ here—that limits a claimant to simple, routine work with limited interactions with others." *T.L.E. v. Bisignano*, No. 23-CV-604-A, 2025 WL 2522510, at *3 (W.D.N.Y. Sept. 2, 2025)(citing *Michelle K. v. Commissioner of Social Security*, 527 F.Supp.3d 476, 483 (W.D.N.Y. 2021).

The ALJ relied upon Plaintiff's reports of daily activities, including his ability to make simple meals, to do housework, to go out alone, to handle stress "pretty well" unless depressed, and generally to manage his own finances, T. 367, 368, 371, as activities consistent with the ability to sustain simple, routine work consistent with the RFC. T. 24. In addition, Plaintiff reported activities of spending time with others in

person or via text message, including visiting family members at their homes or watching television with them, see, T. 369, supported the RFC's assessment that Plaintiff had the ability to tolerate a low level of interpersonal contact. T. 25. Moreover, the ALJ also considered the fact that Plaintiff had been engaged for months in work activity with earnings at the substantial gainful activity ("SGA") level. At the time of the hearing, Plaintiff was working part-time at the front desk of a senior facility and, by his own testimony, had little difficulty interacting with others at his current job, including management. T. 45. Plaintiff testified that at his hearing that he was working part time, 15-16 hours per week, for about six to seven months, at the front desk of an independent living facility for seniors; his reported duties included charting the residents' meals, ensuring that they attended their doctor's appointments, and "watch[ing] the desk." T. 43-44. In addition, the ALJ noted, see, T. 26, that based upon his previous work experience at Game Stop, he was able to interact with strangers fine if he stayed on his sales script, but that it would become "tense and not genuine" if the interaction were to become "more social." T. 50. Plaintiff also noted that he was able to get along well with his former (Game Stop) supervisor, whom he described as understanding of his alleged propensity for mistakes. T. 52. Based upon the foregoing evidence in the record, the ALJ reasonably concluded that Plaintiff's testimony supported an ability to sustain simple tasks, without being off task more than 5% of the workday, and to tolerate a low degree of interpersonal contact with supervisors, coworkers, and the public, consistent with the RFC. T. 25.

The medical evidence also supported the RFC in that Plaintiff, following his hospitalization and treatment with lithium in March 2020, made a "remarkable" recovery according to his attending physician, William Boggiano, M.D. (T. 460). Thereafter, Plaintiff reported that he was generally able to control his symptoms through outpatient care, meditation, and journaling. T. 686. While noting that Plaintiff's primary care provider, physician assistant ("PA") Lauren Weeks, found him to exhibit stable symptoms, see, T. 238, the ALJ also considered the fact that in June of 2021 Plaintiff's symptoms were exacerbated and he was hospitalized. However, it was further noted that such hospitalization resulted from the fact that Plaintiff had stopped taking one of his antipsychotic medications, Zyprexa, see, T. 607, 646, and that once he began taking the medication again, he recovered well while in the hospital. *Id.*; see also, T. 28.

Thus, while Plaintiff correctly observes that the ALJ rejected Dr. May's and Dr. Dekeon's opinions that Plaintiff was not disabled as they determined that Plaintiff had no restrictions or limitations, see, T. 69-70, 84-85, the ALJ's determination and RFC inured to Plaintiff's benefit as the reason she found them unpersuasive was because they were not restrictive enough. T. 28. Under these circumstances, the ALJ can hardly be faulted for crafting the RFC that she did. See Patrick R. v. Commissioner of Social Security, 2022 WL 17247242, *3 (W.D.N.Y. 2022) ("[i]lt has been well-recognized that it is the ALJ who is tasked with formulating an RFC based on a review of the entire record, and that it is within the ALJ's discretion to resolve genuine conflicts in the evidence"). Here, in crafting the RFC, the ALJ properly

determined, based largely on Plaintiff's own testimony and description of his condition, symptoms, and history, that Plaintiff did, in fact, have some limitations. In reaching that conclusion, the ALJ appropriately exercised her discretion to resolve the conflict between the experts' opinion that Plaintiff was not disabled and the other evidence before her which suggested that Plaintiff suffered from some limitations. *See, e.g.*, *Beaman v. Comm'r of Soc. Sec.*, No. 1:18-CV-1344 EAW, 2020 WL 473618, *5 (W.D.N.Y. 2020) (holding that "[p]laintiff's argument that the ALJ based her highly specific RFC based upon her own lay opinion necessarily fails[;] [i]t is clear that the ALJ fashioned her RFC finding by referring to [the consultative examiner's opinion] and incorporating additional restrictions based on [p]laintiff's own testimony"); *Catalfamo v. Berryhill*, 2019 WL 1128838, at *2 (W.D.N.Y. 2019) (rejecting argument that ALJ improperly substituted his own lay opinion where ALJ gave "little weight" to two medical opinions and "impose[d] more restrictions than th[ose] two opinions suggested were necessary").  Indeed, "the fact that the ALJ afforded Plaintiff the benefit of the doubt and included a 5% off-task time limitation in the RFC assessment is not grounds for remand." *Lesanti v. Comm'r of Soc. Sec.*, 436 F. Supp. 3d 639, 649 (W.D.N.Y. 2020)(citing *Baker v. Berryhill*, No. 1:15-cv-00943-MAT, 2018 WL 1173782, at *4 (W.D.N.Y. Mar. 6, 2018) ("[R]emand is generally not warranted where the ALJ's RFC finding is more restrictive than the limitations set forth in the medical opinions of record.").

  While Plaintiff may disagree with the ALJ's conclusion, Plaintiff's burden was to show that no reasonable mind could have agreed with the ALJ's conclusions. See

*Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) ("Smith had a duty to prove a more restrictive RFC and failed to do so."). He has failed to do that.

### IV.     CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. 4) is **DENIED** and the Commissioner's motion for judgment on the pleadings (Dkt. 7) is **GRANTED**. Plaintiff's complaint is **DISMISSED** in its entirety with prejudice. The Clerk of the Court is directed to close this case.

**IT IS SO ORDERED**.

*s/Richard J. Arcara*
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT COURT

Dated:  November 7, 2025
        Buffalo, New York